1
2
3
4
5

JAMES R. HAWKINS, APLC
James R. Hawkins, CA Bar No. 192925
james@jameshawkinsaplc.com
Gregory Mauro, CA Bar No. 222239
greg@jameshawkinsaplc.com
9880 Research Drive, Suite 200
Irvine, California 92618
Telephone:   949.387.7200
Facsimile:   949.387.6676

6
7

Attorneys for Plaintiff EDUARDO
FIGUEROA, SR., individually and on
behalf of others similarly situated

8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

11
12
13
14
15
16
17
18
19

EDUARDO FIGUEROA, SR.,
individually and on behalf of others
similarly situated,

　　　　　Plaintiffs,

　　v.

ALLIED BUILDING PRODUCTS
CORP, a New Jersey Corporation; and
DOES 1 to 50, Inclusive,

　　　　　Defendants.

Case No. 8:16-cv-02249-AG-KES
Hon. Andrew J. Guilford
Courtroom: 10D

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE**

Hearing: April 16, 2018
Time: 10:00 a.m.

20
21
22
23
24
25
26
27
28

0

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY.................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.........................2

      A. The Pleadings and the Parties...........................................2

      B. The Parties Have Completed Comprehensive Discovery........3

      C. Mediation, Motion for Class Certification, Settlement
         Negotiations and Preliminary Approval............................3

III. SUMMARY OF SETTLEMENT TERMS .....................................4

      A.  The Class and Class Members..........................................4

      B. Settlement Consideration...............................................5

         1.  The Maximum Settlement ("MSA").........................5

         2.  The Net Settlement Proceeds ("NSP").....................5

         3.  Non- Reversionary Settlement..............................6

         4.  Individual Settlement Payments.............................6

         5.  The Release Claims...........................................7

IV.  ARGUMENTS FOR PRELIMINARY SETTLEMENT APPROVAL ........7

      A.  The Settlement Is Fair, Adequate, and Reasonable....................7

         1.  Strength of the Plaintiff's Case.......................8

         2.  Risk, Expense, Complexity, and Duration of
            Further Litigation......................................13

         3.  Risk of maintaining class action status throughout
            the trial................................................15

         4.  The Amount offered in settlement...................16

         5.  Extent of discovery completed and stage of the
            proceedings.............................................17

         6.  The experience and views of counsel..............18

I

B.   The Requirements for Conditional Certification are Satisfied........19

    1.   The Class is sufficiently numerous.................19

    2.   There are questions of law and fact common to the class................................................. ....20

    3.   Plaintiff's claims are typical of those of the class members.....................................................20

    4.   Plaintiff and class counsel are adequate...........21

    5.   Common questions predominate over individual...................................................21

    6.   Class resolution is superior to other available methods.............................................22

C.   The Proposed Class Notice is Adequate...............................22

D.   Requested Fees, Costs, and Enhancement Are Reasonable...... .....23

V.   CONCLUSION .......................................................................24

II

# **TABLE OF AUTHORITIES**

*Brinker Restaurant Corp. v. Superior Court*,
     53 Cal. 4th  1004, 1028-29 (2012) .................................................... 11

*Candy Shops, Inc. v. Superior Court*,
     201 Cal.App 4th, 889, 902 (2012) ................................................... 15

*Class Plaintiffs v. City of Seattle*,
     955 F.2d 1268, 1276 (9th Cir. 1992) ................................................. 9

*Gonzalez v. Downtown LA Motors, LP*,
     215 Cal. App. 4th 36, 50 (2013) ..................................................... 11

*Hanlon v. Chrysler Corp*
     150 F.3d 1011, 1026 (9th Cir. 1998) ............................... 9, 21, 22, 23

*Molski v. Gleich*,
     318 F.3d 937 (9th Cir. 2003) ......................................................... 20

*Murphy v. Kenneth Cole Productions, Inc.*,
     40 Cal.4th 1094, 1104 (2007) ........................................................ 12

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
     221 F.R.D. 523, 528 (C.D. Cal. 2004) ....................................... 18, 19

*Officers for Justice v. Civil Serv. Comm'n*,
     688 F.2d 615, 625 (9th Cir. 1982) .................................................... 9

*Phillips Petroleum Co. v. Shutts*,
     472 U.S. 797 (1985) ....................................................................... 24

*Van Bronkhorst v. Safeco Corp.*,
     529 F.2d 943, 950 (9th Cir. 1976) .................................................... 9

*Williams v. MGM-Pathe Commun. Co.*,
     129 F.3d 1026, 1027 (9th Cir. 1997) ............................................... 25

III

# STATUTES, RULES AND REGULATIONS

Cal. Lab. Code § 510(a) ...................................................................11

Cal.  Lab. Code § 512 ......................................................................11

Cal. Lab. Code section 226 ..............................................................12

Cal. Lab. Code § 226(e) ...................................................................12

Cal. Lab. Code § 226.7 .....................................................................11

Cal. Lab. Code § 1194 (a) ................................................................10

# FEDERAL RULES

Fair Labor Standards Act, 29 U.S.C. §§ 201, et. seq .......................10

Rule 23(a) .........................................................................................20

Rule 23(a)(2).....................................................................................21

Rule 23(a)(3).....................................................................................21

Rule 23(a)(4).....................................................................................22

Rule 23(b)(3) ..............................................................................20, 23

Rule 23(e) ...........................................................................................9

TABLE OF CONTENTS AND AUTHORITIES
CASE NO. 16-cv-02249

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION AND SUMMARY

3      Plaintiff Eduardo Figueroa, Sr. ("Plaintiff"), on behalf of himself and the

4   proposed Class hereby respectfully requests that the Court issue an order

5   preliminarily approving the parties' Joint Stipulation of Class Action Settlement

6   and Release ("Settlement" or "Settlement Agreement")[1].

7      Plaintiff, without opposition from Defendant Allied Building Products,

8   Corp.[2] ("Defendant"), submits this memorandum of points and authorities in

9   support of the motion for preliminary approval of the Settlement.  Plaintiff

10   respectfully requests on behalf of the Parties that the Court preliminarily approve

11   the Settlement Agreement, the Notice of Class Action Settlement attached as

12   Exhibit A thereto and the FLSA Claim Form attached thereto as Exhibit B.

13      Subject to the Court's approval, the parties have settled this action for a

14   non-reversionary Total Settlement Amount of $2,500,000.00 ("TSA") including

15   (1) the Net Distribution Fund; (2) Class Counsel Fee Award in an amount not to

16   exceed $833,333.00 and Class Counsel Costs Award of $20,000; (3) a Plaintiff

17   Service Award not to exceed $2,500 for Plaintiff ("Class Representative Fees");

18   (4) all Settlement Aadministration Costs in the amount of $12,000; (5) all payroll

19   taxes and all other applicable taxes, excluding the employer's portion of the

20   payroll taxes; and (6) payment for any and all penalties under the California

21   Private Attorneys General Act of 2004 ("PAGA") in the amount of $25,000.00

22   ("PAGA Award"), seventy-five percent of which ($18,750) will be paid to the

23   California Labor Workforce Development Agency ("LWDA") and 25% of which

24   ($6,250) will be distributed to the Participating Class Members.

25

26   [1] The Joint Stipulation of Class Action Settlement and Release is attached as
Exhibit 1 to declaration of James Hawkins, herein after "Hawkins Decl.
27   [2] In January 2018, Allied Building Products changed its corporate form such that it
28   now operates as Allied Building Products, LLC. (Settlement ¶ 2.12)

1

(Settlement ¶¶ 2.19, 2.35).  The remaining Net Distribution Fund ("NSF") estimated at $1,613, 417 will be allocated for Individual Settlement Payments to the Participating Class Members. (Settlement ¶¶ 2.19, 3.9.3).  This is non-reversionary settlement. (Settlement, ¶ 2.35).

Based upon Defendant's records, the Class consists of approximately 491 current and former Class Members. (Settlement, ¶ 2.4).  Plaintiff respectfully submits the Settlement Agreement provides the Class Members with a fair, adequate and reasonable settlement of their class claims against Defendant and asks the Court to enter the concurrently lodged [Proposed] Order preliminarily approving the Settlement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Pleadings and the Parties

On or about September 22, 2016, Plaintiff Eduardo Figueroa, Sr. filed a putative class action in the Superior Court of California, County of Orange County entitled: *Eduardo Figueroa, Sr., an individual on behalf of himself and others similarly situated, v. Allied Building Products Corp., a New Jersey Corporation, and DOES 1-50, inclusive*, Case No. 30-2016-00877140-CU-OE-CXC.  (Hawkins Decl. ¶ 2; Settlement ¶ 1.1).

On or about December 2, 2016, Plaintiff filed a First Amended Complaint asserting the following causes of action: (1) Failure to Pay Wages including Overtime (Labor Code §§ 510 and 1194, and the IWC Wage Order); (2) Failure to Provide Meal Periods (Labor Code §§ 226.7 and 512, and the IWC Wage Order); (3) Failure to Authorize Rest Periods (Labor Code § 226.7 and IWC Wage Order); (4) Failure to Timely Pay Wages Due (Labor Code §§ 201-203); (5) Failure to Provide Accurate Wage Statement (Labor Code § 226); (6) Unfair Competition (Business & Professions Code § 17200); and (7) Penalties Pursuant to Labor Code § 2699. (Hawkins Decl. ¶ 3; Settlement ¶ 1.2).

On December 23, 2016, Defendant removed the action to the

2

United States District Court, Central District of California, where the action is currently pending as Case No. 8:16-cv-02249-AG-KES. The Complaint seeks injunctive relief, as well as recovery of compensatory damages, penalties, interest, and attorneys' fees and costs.  On February 18, 2018, Plaintiff filed a Second Amended Complaint adding a cause of action for unpaid wages and penalties pursuant to the Fair Labor Standards Act (FLSA).   (Settlement ¶ 1.3). On December 22, 2016, Defendant filed its Answer, denying Plaintiff's allegations and asserting numerous defenses and is also deemed the answer to the Second Amended Complaint. (Hawkins Decl. ¶ 3).

**B.     The Parties Have Completed Comprehensive Discovery**

Plaintiff served comprehensive sets of formal written discovery.  (Hawkins Decl. ¶¶ 7-9).  The parties have also conferred as to the production of voluminous documents and information.  (*Id*.).  Discovery, included an exchange of information and documentation about *inter alia:* the number of current and former putative class members who worked during the relevant time period; Defendant's operational structure, including breakdown of locations; Defendant's timekeeping, meal period and rest break policies; documents evidencing Defendant's communications, training materials, and procedures for managing payment for all hours worked, meal periods and rest breaks; driver logs; electronic time records for putative class members; and other relevant information, including Plaintiff's personnel and payroll file. The parties have also conducted numerous and extended conferences regarding the allegations in the litigation and Defendant's practices relating to putative class members working in California.  (*Id*.).  Plaintiff's counsel has thus conducted extensive discovery relating the claims. (*Id*.).

**C.     Mediation, Motion for Class Certification, Settlement Negotiations and Preliminary Approval**

After conducting comprehensive discovery, many meetings, and ongoing formal and informal exchanges of documents and information, and review of

3

records, the parties agreed to mediate the matter before the well-respected employment class action mediator, Jeffrey Ross, Esq. in Oakland, California. (Hawkins Decl. ¶ 11). The Parties did not then resolve the case, but continued to engage in further settlement discussions facilitated by Mr. Ross. At the same time, the Parties continued with written discovery and preparing for class certification (and the opposition thereto). The Parties' negotiations continued for several weeks through various phone calls and emails through Mr. Ross. On or around December 8, 2017, the Parties accepted a mediator's proposal and reached the foregoing Settlement. The parties then worked to arrive at the final form of their Settlement Agreement that is now before this Court for preliminary approval. (*Id.*).

## III. <u>SUMMARY OF SETTLEMENT TERMS</u>

### A. The Plaintiff, Defendant and the Class Members

Pursuant to the Settlement, the "Class" or "Class Members" means all current and former non-exempt employees of Allied Building Products Corp. and Allied Building Products, LLC who worked as Drivers or Loaders, or having the same job duties, however titled, including but not limited to, Special Truck- Spider, Special Truck- Gradall, Special Truck- Conveyor, Special Truck- Boom, Special Truck- Crane, Truck H/L Lead, Truck HIL, Truck H/L Class C, Truck H/L Class A, Tractor Driver, and Straight Driver, in the State of California at any time from September 22, 2012 through and including the 18 Preliminary Approval Date. Defendant confirms there are approximately 491 Class. (Hawkins Decl. ¶ 6; Settlement, ¶ 2.4).

Defendant was established in Jersey City, NJ in 1950 as a family-operated roofing and custom sheet metal fabrication business. Defendant employed/employs approximately 491 Class Members during the Settlement Class Period of September 22, 2012 through the date of preliminary approval**.** The proposed Class Representative Plaintiff Eduardo Figueroa was employed as a non-exempt driver and loader during the Class Period. **(**Hawkins Decl., ¶¶ 4, 5; Eduardo Figueroa

4

"Figueroa Decl." ¶ 2; Settlement, ¶¶ 2.4, 2.9).

### B.   Settlement Consideration

#### 1.   The Total Settlement Amount ("TSA")

Defendant has agreed to pay a non-reversionary Total Settlement Amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) to settle this Action. (Settlement, ¶ 2.35).

#### 2.   The Net Distribution Fund ("NSF")

Upon the Court granting preliminary and then final approval of the requested amounts, the following specific payments will be made from the TSA to arrive at the NSF, which is the amount available for distribution to the Participating Class Members (Settlement, ¶¶ 1.17):

- Up to $2,500 allocated to Plaintiff as a Plaintiff Service Award.
- An amount of $12,000[1] to be paid to Simpluris, Inc. for serving as the Settlement Administrator in this action and to cover the cost of the Settlement Administration.
- $25,000 allocated to PAGA penalties, with 75% ($18,750) being paid to the LWDA from the MSA and 25% ($6,250) remaining for *pro rata* distribution to the Participating Class Members.
- An amount not to exceed one-third of the TSA, or $833,333.00, in attorneys' fees to James Hawkins APLC as Class Counsel.
- Documented Class Counsel Costs of up to $20,000[2]. In the event the Court grants approval of these requested amounts, the total NSF available to be paid to Participating Class Members will be approximately $1,613,417.00. Any of the foregoing amounts not approved by the Court will be added to the

---

[1] See declaration of Michael Bui, Settlement Administrator confirming $12,000 Settlement Administration Costs and detailing Simpluris, Inc.'s experience to administer this settlement.

[2] Class counsel Costs are approximately $14,000. (Hawkins Decl. ¶ 60).

5

NSF. (Settlement ¶ 2.19).

### 3. Non-Reversionary Settlement

This is a non-reversionary settlement. Thus, no money will revert to Defendant. All of the NSF will be paid to all Participating Class Members pursuant to the formula described above. (Settlement ¶ 2.35).

### 4. Individual Settlement Payments

The Participating Class Members means any Class Member who has not requested exclusion from the Settlement. Participating Class Members will receive Individual Settlement Payments from the Net Distribution Fund calculated and apportioned from the Total Settlement Amount based on the following formula:

Preliminarily, $250,000 of the Net Distribution Fund will be set aside for the FLSA Released Claims[1]. Each Class Member who submits a Claim Form will receive $500.00. Any unclaimed portion of the $250,000 will be distributed with all remaining monies in the Net Distribution Fund. The remaining Net Distribution Fund will be allocated as follows: (i) Each Class Member will receive 1 point for each dollar earned during the Class Period as reportable wages on his or her Form W-2; (ii) Any Class Member who separated his or her employment with Defendant from September 22, 2013 through and including the Preliminary Approval Date will receive 1,000 additional points to compensate the Class Member for his or her waiting time penalty claim; (iii) The value of a point shall be determined by dividing the remaining Net Distribution Fund by the total number of points available to each Class Member as set forth in subsections (i) and (ii) above. Each Class Member shall receive a gross payment equal to his or her point multiplied by the value of a point. To the extent that any Class Member excludes him or herself from the Settlement and there are unclaimed funds

---

[1] The Settlement contemplates that Class Members will need to submit a Claim Form in order to Opt-In and receive a portion of the FLSA allocation and release their FLSA Released Claims. (Settlement ¶¶ 2.3, 2.18, 3.6).

remaining of the Net Distribution Fund, each Class Member shall be entitled to receive a pro-rated increase based on their total number of points as compared to the total number of points for all Class Members. (Settlement ¶ 3.9.4) Thus no money reverts to Defendant.

The Settlement also provides that, because the Individual Settlement Payments represent a compromise of claims for alleged unpaid wages, interest, reimbursement and statutory penalties, for tax purposes all Individual Settlement Payments will be allocated as follows: 1/3 each attributed to penalties, interest and wages. Defendant will be responsible for the employer portion of taxes allocated to wages separate and apart from the MSA. (Settlement, ¶ 3.9.5).

### 5.    The Released Claims

All Class Members who do not exclude themselves from the Settlement will be bound by the terms of the Settlement and subject to its release provisions. (Settlement, ¶¶ 2.2, 2.18, 2.27, 3.6).  All Released Claims are released for all Class Members regardless of whether 23 they receive any payment under the Settlement unless they exclude themselves from the Settlement, and all FLSA Released Claims are released for all Class Members who submit a Claim Form. The scope of the Released Claims and Released Parties as defined in the Settlement are narrowly tailored and focused on the facts and causes of action pled in the operative complaints or which could have been asserted based upon the factual allegations as pled.  (*Id.*)  In addition, Plaintiff provides a general release as to himself only. (Settlement ¶ 2.10). There is also a 1542 waiver as to the Released Claims only. (Settlement ¶ 2.18).

## IV.    ARGUMENTS FOR PRELIMINARY SETTLEMENT APPROVAL

### A.    The Settlement Is Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) requires court approval of any class action settlement.  The touchstone for approval is whether the settlement is "fair, adequate, and reasonable." (*See, e.g., Hanlon v. Chrysler Corp.*,

7

150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).  The Court's review "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." (*Hanlon*, 150 F.3d at 1027 (citation omitted)).  As a "[s]ettlement is the offspring of compromise," the question "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  (*Id*.).

The law favors settlement, and this is particularly true in class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  (*Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976)).  Indeed, strong judicial policy favors the settlement of actions in federal court, particularly where class action litigation is concerned.  (*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); Rule 23(e)).  The factors which bear on settlement analysis include:  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  (*Hanlon*, 150 F.3d at 1026 (internal numbering added)).  Plaintiff respectfully submits that each of the applicable *Hanlon* factors supports granting preliminary approval of the Settlement Agreement.

### 1.    Strength of the plaintiff's case

This settlement embodies a compromise between the positions and evaluations of the opposing parties of this controversy. Considerable disagreement exists between the parties on the facts and the law. For negotiation purposes, credence has been given to some of Defendant's assertions related to liability and

1   damages. The resulting non-reversionary Total Settlement Amount of

2   $2,500,000 represents a reasonable compromise, resulting in fair and appropriate

3   recovery available to each member of the Class Members. (Hawkins Decl. ¶¶ 12,

4   15-17).

5           Here, the main thrust of Plaintiffs' claims against Defendant has centered

6   around the failure to pay wages for alleged off the clock work including overtime

7   as well as meal and rest period violations under the California Labor Code and

8   alleged failure to pay overtime under the Fair Labor Standards Act, 29 U.S.C. §§

9   201, et. seq. The claims asserted in the Second Amended Complaint are based

10  upon Defendant's auto deduct policy for meal periods never provided, short meal

11  periods, or late meal periods, and its unlawful rounding policy.  Accordingly,

12  Plaintiff and the Class members were not compensated for time spent working

13  during meal periods and also the time spent working pre-shift and post-shift, which

14  time was alleged to be unlawfully rounded.  Plaintiff and class members spent this

15  unpaid time doing the day to day activities necessary to complete their daily

16  assignments.  Further, due to the work demands of Defendant, it is alleged the rest

17  periods and meal periods were not provided according to California law and were

18  either untimely, short or not provided at all.

19          Labor Code section 204 establishes the fundamental right of all employees

20  in the State of California to be paid wages, including minimum wage, straight time

21  and overtime, in a timely fashion for their work. Labor Code section 1194 (a) reads

22  that notwithstanding any agreement to work for a lesser wage, any employee

23  receiving less than the legal minimum wage or the legal overtime compensation

24  applicable to the employee is entitled to recover in a civil action the unpaid balance

25  of the full amount of this minimum wage or overtime compensation, including

26  interest thereon, reasonable attorney's fees, and costs of suit. Labor Code section

27  510(a) reads in pertinent part: "Any work in excess of eight hours in one workday

28  and any work in excess of 40 hours in any one workweek … shall be compensated

at the rate of no less than one and one-half times the regular rate of pay for any employee." Double time must be paid for hours worked in excess of 12 hours in a day and for hours worked on the 7th day in excess of eight.

Plaintiff asserted he and the Class did not enjoy a full 30-minute meal period but had 30 minutes of time unlawfully deducted. The time owed is accounted for in the time records because Defendant systematically deducted 30 minutes for meal periods, while some meal periods were never provided. Plaintiff and the Class must be compensated for this time under the minimum wage and overtime laws. (*See Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 50 (2013).) As a result, Plaintiff and the class members were also deprived of overtime compensation due to Defendant's unlawful deduction policy.

Plaintiff also alleged that under Section 512 of the California Labor Code, Defendant is liable for meal period premiums. Here, the evidence demonstrates Defendant frequently failed to provide timely meal periods, and many meal periods were also either less than 30 minutes and/or interrupted. Further, Plaintiff alleged that Defendant failed to pay for any meal period premiums during the Class Period.

With regards to rest breaks, employers must authorize and permit a duty-free rest period of 10 minutes in length for each 4 hours worked, or major fraction thereof, which should be taken so far as practicable in the middle of each work period. Cal. Lab. Code § 226.7; *Brinker*, 53 Cal. 4th at 1028-29. Defendant's handbook mirrors the statutory language for meal and rest periods. However, Plaintiff argued that despite these apparent compliant policies, Plaintiff and class members were unable to enjoy meal and rest breaks due to the job demands placed upon the Class by Defendant. Employees are entitled to "a paid 10-minute rest period per four hours of work. [Citation.]" (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1104.) As a consequence of Defendant's failure to authorize and permit rest periods and provide meal periods, Plaintiff alleged it is liable for one hour of pay at each employee's regular rate for every day such a rest

10

1   period and meal period was not provided.

2       As a consequence of the above-specified violations and its failure to pay

3   premium payments and all wages earned, Defendant violated the provisions of

4   California Labor Code sections 201-203 requiring the timely payment of wages at

5   the time of employee's separation from employment.  Here, Defendant argued that

6   it did not fail to pay wages in the first instance, and that any failure to pay wages

7   was an honest mistake and in good faith and not "willful."

8       Plaintiff also sought penalties under Cal. Lab. Code section 226 as Plaintiff

9   alleged Defendant's wage statements issued to Plaintiff and the Class were non-

10  compliant by virtue of the above specified violations.  Further, to the extent that

11  Defendant failed to record and compensate employees for meal and rest period

12  premiums and failed to properly pay employees for all hours worked, the "gross

13  wages" earned is inaccurate in violation of Labor Code section 226(a)(1),

14  becoming an alternative cause for penalties under section 226(e).

15      Plaintiff alleged other claims for unfair competition and PAGA, with the

16  majority of these claims flowing from Defendant's alleged failure to pay wages due

17  to its auto deduct policy and failure to provide meal period violations.  While

18  Plaintiff believes in the strength of his allegations and claims, there is no certainty

19  he could prove sufficient systematic violations at Defendant's hands to certify the

20  Class and ultimately prevail at trial.  (Hawkins Decl., ¶ 14).  In addition, Defendant

21  has presented defenses regarding Plaintiff's claims, that, if successful, would result

22  in no liability to Defendant. (Hawkins Decl. ¶¶ 33-48).

23      Among other things, Defendant argued it had lawful meal and rest periods

24  policies in place during the Class Period and it notified the Plaintiff and Class of

25  their policies to provide meal periods and permit and authorize rest periods

26  according to California law.  Defendant also pointed to its policy to require drivers

27  and loaders to record their meal periods both when working in the field and while

28  at the yard.  Defendant argued any meal periods not taken was a voluntary waiver

11

of the meal and rest breaks by the Plaintiff and the Class.  Further, Defendant argued Plaintiff and the Class were instructed to notify their supervisors when meal and rest periods could not be taken due to the work load.  Defendant pointed to the policies, the lack of complaints by the Class either formally or informally, Defendant's training practice, and the availability of the Class to manage their own day's workload in the field, as evidence of their compliance with California law.

Class Counsel also recognized the difficulties and complications of proving Defendant's knowledge of alleged off-the-clock work or unreimbursed expenses to establish liability, particularly in the face of the defenses. (Hawkins Decl. ¶¶ 33-48).

The PAGA claim for penalties was dependent on the success of the underlying claims, and, even if successful, the amount of penalties were also uncertain as the Labor Code permits Courts the discretion to decide the amount of penalties awarded, if any, which sometimes has been nominal. Plaintiff and Class Counsel have given serious consideration to all facts and arguments they face in this matter and have ensured a reasonable and realistic settlement value based upon the discovery to date and strengths and weaknesses of Plaintiff's class claims. (Hawkins Decl. ¶¶ 33-48).

Through analysis and review of Defendant's timekeeping and payroll record production, as well as Plaintiffs' own evidence, Plaintiffs' Counsel estimated Defendant's potential maximum damages and penalties exposure on all claims at $7,079,256. (Hawkins Decl. ¶ 29)

More specifically, Plaintiff calculated the following damages for each of the claims asserted in the complaints:

- Failure to Pay Wages and Overtime Due to Auto Deduct: $934,706;
- Failure to Pay Wages and Overtime Due to rounding; $373,882;
- FLSA Overtime Claim (the FLSA overtime claim overlaps with the California Labor Code Claim): $934,706.

12

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO. 16-cv-02249

- Failure to Provide Meal Periods: $1,495,830;
- Failure to Permit and Authorize Rest Period: $997,020;
- Failure to Timely Pag Wages: $775,612;
- Wage Statement Violations: $550,000
- PAGA: $1,017,500. (Hawkins Decl. ¶ 30).

### 2. Risk, expense, complexity, and duration of further litigation

Defendant vehemently denies and continues to deny each of the claims and contentions alleged by Plaintiff, including that class certification is appropriate. (Settlement, ¶ 1.9; Hawkins Decl., ¶¶ 33-47). Defendant has asserted multiple factual and legal defenses to class certification and liability and denies any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the matter. *(Id.)*

Defendant countered Plaintiff's arguments with evidence that pursuant to California law, it provided Plaintiff and Class Members regular meal and rest breaks during which they do no work. Defendant argued Plaintiff and the Class were instructed to take the meal periods while out in the field and it was left up to the drivers when to schedule their own meal period and break times. Defendant positioned that Plaintiff and the Class were instructed to not do any work while on their breaks and are free to do whatever they wanted on their lunches. Defendant also argued that because putative class members do not record their rest breaks in the timekeeping system, or in any other manner, Defendant contended that there is simply no common record of whether an employee actually took his or her rest break or chose to work through it. If an employee had any concerns that he or she was not provided with the opportunity to take a meal break or rest break, he or she was encouraged to raise the issue with their supervisors or Human Resources. As a result, Defendant contends that, if the parties were forced to litigate these issues, class certification would be denied because individualized inquiries would be required to determine the circumstances surrounding potential missed rest breaks

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          CASE NO. 16-cv-02249

1    and meal periods. (Hawkins Decl. ¶¶ 22, 58).

2         Defendant claimed its auto deduct policy was lawful because it merely

3    deducted for meal periods the drivers and loaders were provided in the first

4    instance and that there was a lack of evidence the meal periods were not taken by

5    the Class.  Defendant further argued that Plaintiff and the class could not double

6    recover under the FLSA if overtime was awarded under California Law as that

7    would be an impermissible double recovery for the same alleged overtime wages

8    owed.  Defendant also argued that its rounding policy pursuant to case law such as

9    *See's Candy Shops, Inc. v. Superior Court*, 201 Cal.App 4th, 889, 902 (2012), was

10   lawful.  Defendant argued that any rounded time was deminimis and over time the

11   rounding policy evened out between employer and employee. (Hawkins Decl.

12   ¶¶ 37-40).

13        Accordingly, absent the present Settlement, the further conduct of this

14   litigation will likely span several additional years and require the dedication of

15   extensive resources, if class certification was granted, to establish the merits of all

16   class claims at trial or through contested motion practice.  (Hawkins Decl., ¶¶ 33-

17   48).

18        The issues and arguments Class Counsel has encountered and overcome in

19   arriving at the parties' negotiated settlement terms were many and complex and

20   required skillful advocacy that can arise only out of experience, professional

21   perspective, and success.  (Hawkins Decl., ¶¶ 33-48, 59).  The claims asserted are

22   the types of claims Defendant has alleged depend upon highly individualized

23   inquiries, given the facial compliance of Defendant's meal and rest period policies

24   coupled with its defenses thereto. Yet, Class Counsel has successfully advocated

25   for an excellent resolution of claims that are complex, evidence intensive, and

26   nuanced, and can be very challenging to certify. Class Counsel will also be

27   required to dedicate significant time and resources to proving the merits of the

28   claims, prevailing on them at trial, and withstanding any appellate challenges by

14

Defendant.  Class Counsel has invested substantial effort and numerous hours in litigating this action through complex discovery and meet and confer efforts. (Hawkins Decl. ¶¶ 51, 56).  There is no doubt that future contested litigation will undoubtedly require continued investment of significant time and resources of all parties and the Court. (Hawkins Decl. ¶ 12).

### 3. Risk of maintaining class action status throughout the trial

Plaintiff and Class Counsel recognize that the issues of liability and class certification present significant uncertainty and risk, and the proposed Settlement has accounted for this fact.  If Plaintiff were unable to certify or otherwise prevail on the class claims, a judgment would be entered for Defendant, and the Class Members would receive nothing.  The proposed Settlement, in contrast, offers a guaranteed reasonable value to the Class Members that fairly and reasonably accounts for the very real risks of continued litigation.  Plaintiff will also be required to establish a significant amount of witness testimony, pattern and practice evidence, statistical evidence, sampling evidence, expert testimony, and other evidence in order to evaluate and present arguments at trial if class certification was granted.  (*Id.*).  Defendant has vigorously contested liability, the amount of claimed damages, and the propriety of Class certification, and would have continued to do so through trial. (Hawkins Decl., ¶¶ 35, 36, 48,49).

Although Plaintiff believes his claims are strong on their face, all of Plaintiff's claims on a class-wide basis faced a finding of potential individualized issues at certification.  (Hawkins Decl., ¶¶ 35, 36).  Defendant has contended that the issue of whether or not an employee was properly provided with all required rest period and meal periods on any given day is highly dependent on individualized facts and numerous credibility determinations, and should not be susceptible to class wide determination. (*Id.*)

As a result of the parties' positions, their understanding of the merits of their claims and defenses, the anticipated further lengthy duration of this litigation and

15

the expenses and resources it will require, and Plaintiff's contemplation of the considerable risk that Defendant could defeat certification and prevail on its defenses, thus defeating any and all recovery for the Class Members, Plaintiff and Class Counsel believe it is prudent to settle the claims on the terms set forth in the Settlement Agreement.  (Hawkins Decl., ¶¶ 33-46).

### 4.     The amount offered in settlement

Here, Defendant will pay a TSA of $2,500,000.  After Court-approved deductions of the items referenced above, an estimated $1,613,417 will be available for distribution to the Participating Class Members.  (Hawkins Decl., ¶ 13, 29, 30, 48).  While it is possible that the Class Members would have collected more than the TSA if Plaintiff prevailed on the class claims at trial, the negotiated TSA represents approximately 31% of the potential recovery available for the class claims providing for an average recovery of approximately $2,749 per Class Member plus an additional $500 for participating on the FLSA, with a highest recovery of approximately $9,000.  (Hawkins Decl., ¶¶ 30, 48).

Given the risk of losing at certification and trial, and the time and resource commitment it would entail, the general facial compliance of Defendant's policies and timekeeping records, the Settlement amount is reasonably balanced with the strength of Plaintiff's claims to provide a fair recovery on behalf of the class.  (*See, e.g., Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("in balancing, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class."") (citation omitted); *see also, id.* at 527 ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (citations omitted)).

The parties respectfully submit their proposed Settlement is fair, reasonable, and adequate, given the inherent risks of litigation, the risk that class certification

16

may be denied, and the costs of pursuing the litigation through trial and subsequent appeals. (Hawkins Decl., ¶¶ 33-48). Additionally, as each Class Member's Individual Settlement Payment is dependent on his or her total earnings over the Class Period, each Class Member will receive a proportionate share of the settlement. (*Id*.). Further, all Class members are able to participate in the FLSA portion of the settlement by returning a claim form and no Class Member will be unfairly favored over another. Lastly, Class members who have separated employment will receive a proportionate increase in their recovery equal to 1,000 additional points. This allocation is believed to be a fair allocation for Class Members Labor Code section 203 claim. Thus, based on the above formulas, it is believed there are no allocation issues. All Class Members will receive equal compensation for the alleged harm they each suffered. For instance, those Class Members who have not separated their employment will enjoy the benefits of participating in the settlement less the LC 203 claim they necessarily do not possess. Thus, there is no unfair allocation. For all these reasons, the amounts offered in settlement are fair and reasonable. (Hawkins Decl. ¶¶ 12, 4, 40, 47, 48, 51).

### 5.   Extent of discovery completed and stage of the proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." (*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004)). This putative class action has been in litigation over two years. Both sides have engaged in extensive discovery and investigation, including Defendant's formal and informal production of voluminous timekeeping records and other data, policies and procedures, and relevant personnel file documents and extensive meet and confer efforts. (Hawkins Decl., ¶¶ 10, 11).

Although extensive discovery has been conducted to ensure that the Settlement is fair, adequate and reasonable, there remains substantial litigation

17

ahead without settlement, including extensive deposition and motion practice relating to discovery of contested class information, briefing and preparation for class certification, expert discovery and disclosures, trial preparation, and the trial itself.  (Hawkins Decl. ¶¶ 48, 49, 51)

Armed with all of the relevant information, and with the help of an experienced mediator, counsels for the parties have participated in a lengthy, serious and informed negotiations and mediation with a highly regarded wage and hour mediator. (Hawkins Decl., ¶ 11).  It was only after the parties conducted multiple conferences of counsel and exchanged communications with the mediator that the parties agreed to the mediator proposal and the terms now before the Court for preliminary approval.  (*Id*.).  This class action has reached the stage where the parties and their counsels have a clear view of the strengths and weaknesses of their claims and defenses sufficient to support their decision to agree to the Settlement and its negotiated terms.

### 6.    The experience and views of counsel

"Great weight" is normally given to the opinion of counsel regarding class settlement.  (*DIRECTV*, 221 F.R.D. at 528).  The Settlement was a product of serious, informed, and non-collusive negotiations overseen by a well-respected mediator.  The Class is represented by experienced counsel, and the parties exchanged a significant number of documents and information such that Class Counsel can make an informed recommendation about the proposed settlement. (Hawkins Decl., ¶¶ 12, 47, 56).

Counsel for Plaintiff and the Class Members has represented, litigated, mediated and settled numerous wage and hour class actions before numerous state and federal courts, and has sufficient knowledge of the strengths and weaknesses of the methods of compensation to evaluate the fairness of the proposed Settlement.  (Hawkins Decl.,¶ 56, 57). Class Counsel is highly experienced in complex wage and hour class action litigation, and believes the Settlement to be

fair.  (Hawkins Decl., ¶ 56).  Plaintiff respectfully submits the Settlement should be entitled to a presumption of fairness and granted preliminary approval.

### B.    The Requirements for Conditional Certification Are Satisfied

Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes.  (*See, e.g., Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)).  Under Rule 23(a) of the Federal Rules of Civil Procedure (e.g., Rule 23(a)), a class action is appropriate when there is sufficient:  1) numerosity that joinder of all members is impracticable; 2) common questions of law or fact to the class; 3) typicality between the claims of the class representative and the class members; and 4) the class representative and class counsel will fairly and adequately protect the interests of the class.  (*Id*.).  Upon satisfying Rule 23(a) requirements, Rule 23(b)(3) allows for certification if there is sufficient predominance of the class member's claims over those of individuals, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. (Rule 23(b)(3)).  Plaintiff respectfully submits that conditional certification is appropriate because the Settlement Agreement satisfies the requirements of both Rule 23(a) and Rule 23(b)(3).

### 1.    The Class is sufficiently numerous

The Settlement Cass is comprised of approximately 491 present and former Class of drivers and loaders, however titled, of Defendant who have can be identified according to Defendant's records.  (Hawkins Decl. ¶¶ 4, 6).  It would be impracticable to attempt to join 491 Class Members given the efficiencies afforded by class treatment, and numerosity is sufficient under Rule 23(a)(1).

### 2.    There are questions of law and fact common to the Class

The requirement for common questions of law and fact under Rule 23(a)(2) is satisfied by a low threshold showing.  (*Hanlon*, 150 F.3d at 1019-1020 (emphasizing the "minimal requirements" and "permissive" construction of Rule 23(a) (2)).  Plaintiff submits there are several common questions of law and fact

---

19

corresponding to the seven causes of action of the operative Complaint and the prayer for relief.  Common questions, such as whether Defendant's failure to provide lawful rest periods and meal periods, pay overtime wages, had an unlawful deduct policy, provide accurate wage statements or timely pay wages upon separation violates the California Labor Code and related provisions, predominate and can be resolved and proven for all Class Members by reference to uniformly applied policies and practices and common company records.  (Hawkins Decl. ¶ 61).  The class claims are well-suited for class resolution as they present common questions of law and fact.

### 3.      Plaintiff's claims are typical of those of the Class members

Typicality under Rule 23(a)(3) requires the class representative's claims to be "reasonably co-extensive with those of absent class members; they need not be substantially identical." (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)).  Plaintiff's individual claims are identical to those of the Class Members because they are class-wide claims for:  (1) Failure to Pay Wages including Overtime under the California Labor Code and FLSA; (2) Failure to Provide Rest Periods; (3) Failure to Provide Meal Periods; (4) Failure to Timely Pay Wages; (5) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions; (6) Violations of the Unfair Competition Laws; which have also given rise to (7) a PAGA cause of action under Labor Code Section 2698 *et seq.* (Hawkins Decl., ¶ 62).  Plaintiff has asserted that each of these class claims are based upon Defendant's uniformly applied policies and practices, and the legal standards and requirements for proving the subject wage and hour claims under the California Labor Code are the same for Plaintiff's individual claims and those of all Class Members.  (*Id.*).

### 4.      Plaintiff and Class Counsel are adequate

Adequacy under Rule 23(a)(4) concerns whether the class representative will "fairly and adequately protect the interests of the class." This inquiry

20

involves two questions: "(1) do the named Plaintiff and their counsel have any conflicts of interest with other class members and (2) will the named Plaintiff and their counsel prosecute the action vigorously on behalf of the class?" (*Hanlon*, 150 F.3d at 1020).  Both requirements are satisfied here.

There is no antagonism between Plaintiff as the Class Representative and the Class Members because they all assert the same underlying claims for the same relief based upon the same violations arising from the same policies and practices.  (*See generally* Eduardo Figueroa Decl.).   Mr. Figueroa's Declaration provides further support for his adequacy to serve as Class Representative, recognizes his requested enhancement is subject to Court approval, and establishes all he did to provide significant assistance to undersigned counsel in prosecuting the class claims against Defendant and arriving at the proposed Settlement.

Counsel for Plaintiff and the Class Members have represented, mediated and settled numerous wage and hour class actions before state and federal courts, and have extensive experience in litigating complex class actions such as this. (Hawkins Decl., ¶ 56).   Numerous Courts have found Plaintiff's counsel to be adequate to serve as a class counsel under either Rule 23 or Section 382 of the California Code of Civil Procedure, and Plaintiff's counsel has achieved excellent results for the classes it has represented.  (*Id*.).

### 5.    Common questions predominate over individual

The predominance requirement under Rule 23(b)(3) is also satisfied here, as Plaintiff believes that common questions of law and fact predominate over individual questions.  (*See, e.g., Hanlon,* 150 F.3d at 1022).   Plaintiff alleges that the proposed Class in this case is sufficiently cohesive, since all Class Members share a common nucleus of facts and potential legal remedies as alleged in the Second Amended Complaint.  (Hawkins Decl., ¶ 62).  Plaintiff also alleges that common questions about payment of wages, or lack thereof, for worked performed by Class Members predominate over individual questions, and the

1   Class Members' potential legal remedies are identical rather than individualized.

2   (*Id*.).  These common issues present a significant aspect of the case and permit

3   determination of liability on a class-wide basis, and thus predominate under

4   Rule 23(b)(3) over any individualized inquiries.  (*See Hanlon*, 150 F.3d at 1022).

5               **6.      Class resolution is superior to other available methods**

6         Class-wide treatment of this dispute is superior to individual litigation

7   under Rule 23(b)(3).  The alternative method of resolution to granting conditional

8   certification and preliminarily approving the Settlement Agreement would require

9   approximately 491 individual claims for relatively small amounts of damages.

10  (Hawkins Decl., ¶¶ 33, 63).  However, individual cases would be uneconomical

11  for potential plaintiffs and their counsel because the cost of litigation dwarfs their

12  potential recovery.  (*Id*.).  All these individual cases would also be looked upon

13  unfavorably by Defendant and the Court because it would cause an extensive

14  duplication of efforts and resources.  A class action is the superior method of

15  resolution under Rule 23(b)(3), and conditional certification is well-justified.

16  **C.      The Proposed Class Notice Is Adequate**

17        Plaintiff and Class Counsel respectfully submit that the parties' proposed

18  Notice of Class Action (Settlement, Exhibit A) comport with the procedural and

19  substantive requirements of Rule 23. Under Rule 23, due process requires that class

20  members receive notice of the settlement and an opportunity to be heard and

21  participate in the litigation. (*See* Rule 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*,

22  472 U.S. 797 (1985)).

23        The Settlement Agreement provides for a notice plan that includes mailing a

24  Notice and FLSA Claim Form in English and Spanish to all Class Members based

25  upon the last known addresses in Defendant's records along with a NCOA search

26  to confirm or find updated or forwarding addresses for any Class Members.

27  (Settlement, ¶ 8.2; Hawkins Decl. ¶¶ 53, 54).   The parties have agreed to an

28  experienced Settlement Administrator, Simpluris, Inc. who provided a competitive

bid and is experienced in class action settlement administration and will mail the Notice. The Notices that are returned as undeliverable, will be re-mailed to the forwarding address. (Settlement, ¶ 3.8.3).

As required by the Settlement, the Notice provides the procedures for Class Members to participate, submit a FLSA claim Form, or object to or exclude themselves from the Settlement. (Settlement ¶ 2.2). The Notice informs Class Members they have sixty (60) days to exclude or object to the Settlement. Plaintiff and Class Counsel respectfully submit the proposed Class Notice satisfies the requirements of Rule 23(c)(2)(B).

### D.    Requested Fees, Costs, and Enhancement Are Reasonable

As the Class Representative, Mr. Figueroa is an adequate Class Representative as he has provided extensive supporting documents, and assisted counsel greatly. (Hawkins Decl., ¶ 52; *see generally* Figueroa Decl.).

Plaintiff and Class Counsel also submit the requested attorneys' fees in the amount of 1/3 of the TSA of $2,500,000 (which equals fees of $833,333) (Hawkins Decl. ¶¶ 56-9) is fair and reasonable, and Defendant does not object to this fee request. Counsel requests that the Court determine the appropriateness of the fee award based upon the percentage of the common fund approach. (*See Williams v. MGM-Pathe Commun. Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) (finding the lower court abused its discretion by improperly awarding attorneys' fees based upon the class members' claims against the fund)). Class Counsel also requests reasonable costs up to $20,000 subject to documentation. Class Counsel has been the only counsel to represent Class Members in this matter, and has borne the entire risk and costs of litigation on a pure contingency basis. (*Id.*).

It is also requested that the Court approve Simpluris Inc. as the Settlement Administrator and preliminarily approve administration expenses of approximately $12,000 as reasonable.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT                    CASE NO. 16-cv-02249

1  **V.**    <u>**CONCLUSION**</u>

2      Plaintiff, without opposition from Defendant, respectfully submits that the

3 proposed settlement is fair, adequate, and reasonable and is in the best interests of

4 the Class Members.  In view of the foregoing and the documents submitted

5 herewith, the parties respectfully request that the Court grant preliminarily

6 approval of the terms of their Settlement Agreement, approve the form and content

7 of the related Notice and FLSA Claim Form, conditionally certify the Class,

8 appoint Plaintiff as the Class Representative, his counsel as Class Counsel, and

9 Simpluris, Inc. as Settlement Administrator, and enter the [Proposed] Order

10 concurrently lodged for the Court's review and approval.

11 Respectfully submitted,

12

13 Dated: March 15, 2018        JAMES HAWKINS, APLC

14             */s/ Gregory Mauro*

15              James R. Hawkins, Esq.

16              Gregory Mauro, Esq.
             Attorneys for Plaintiff individually and on behalf

17              of the Class.

18

19

20

21

22

23

24

25

26

27

28

24